**REED v. MAHONE et al. (No. 3168.)**

(Court of Civil Appeals of Texas. Texarkana. Jan. 28, 1926. Rehearing Denied Feb. 25, 1926.)

1. **Homestead ⬅39—Designation in mortgage of homestead by husband held conclusive on wife objecting to mortgage foreclosure on ground that land concerned was homestead.**

Where husband, who owned 120-acre tract adjoining 177-acre tract giving mortgage covering former tract, designated therein as homestead 23 acres thereof, which included residence and buildings, which with tract of 177

acres made 200 acres allowed as homestead, in view of evidence that such land was better than other, and that designation was not unfair to wife, she cannot object in suit to foreclose mortgage that entire 120-acre tract was homestead.

2. **Homestead ⬅39—Designation by husband of homestead in mortgage held sufficient (Rev. St. 1925, art. 3842).**

Where husband, owning tract of 120 acres contiguous to 177-acre tract, gave mortgage on former, except 23 acres thereof, which, together with 177-acre tract of specified survey lying directly west of tract in question, was designated as a homestead, such designation was sufficient under Rev. St. 1925, art. 3842, regardless of fact that mortgagor's dwelling, which was on 120-acre tract, was erroneously stated to be on 177-acre tract.

3. **Deeds ⬅38(1).**

Description of land in deed is certain if it can be made certain.

4. **Appeal and error ⬅1178(1)—On decision that part of tract whose boundaries were not designated was exempt from deed of trust, case will be remanded to give mortgagor right to select tract exempted.**

In action on note and to foreclose deed of trust in which 23 acres, whose boundary was not designated, was exempted from mortgaged tract as part of mortgagor's homestead, on reversal of judgment for defendants, case must be remanded to give mortgagor right to select boundary of 23-acre tract so as to include residence, barns, orchard, garden, and buildings located on mortgaged land.

5. **Homestead ⬅200—On failure or refusal of mortgagor to select boundaries of land exempted from deed of trust, court should have it designated.**

In action on note and to foreclose deed of trust on tract of land from which 23 acres, whose boundaries were not designated, was exempted as part of mortgagor's homestead, on failure or refusal of mortgagor to make selection of boundary so as to include his residence, barns, orchard, garden, and buildings, court should have it designated and allow foreclosure on remainder of tract.

Appeal from District Court, Bowie County; Hugh Carney, Judge.

Action by J. Wess Reed against J. M. Mahone and others, on a note and to foreclose a deed of trust, in which Mrs. Mahone answered specially pleading a homestead on part of the land in question. From a judgment for the defendants as to part of the land in question, plaintiff appeals. Reversed and remanded, with directions.

The suit is by the appellant against J. M. Mahone and his wife upon a note and to foreclose a lien given by a deed of trust on 230 acres of land of the W. D. Shockley survey and 120 acres, less 23 acres, of the R. M. Lindsay survey in Bowie county.

Mrs. Mahone answered specially pleading

that the lien given on the 120 acres of the R. M. Lindsay survey was given without her concurrence and in fraud of her rights; that she and her six children and husband had occupied and used the 120 acres as a homestead continuously for many years, and there were located thereon their dwelling, barns, stables, and outhouses. She further specially pleaded that the attempted designation by her husband of a homestead set out in the deed of trust was without her concurrence or acquiescence and was void as against her homestead rights as to the entire tract of 120 acres in the Lindsay survey; that her husband deserted her in January, 1924; that the attempted designation falsely recited the fact as to the location of the dwelling.

The appellant replied to the pleading of Mrs. Mahone that the "23 acres of the Lindsay survey" which was reserved from the lien on the deed of trust "be set aside to the defendants so as to include their dwelling house, barns, stables, and outhouses and to the best advantage of the defendants; and that plaintiff have judgment foreclosing his deed of trust lien on said 120 acres less said 23 acres to be surveyed to the best advantage and interest of the defendants so as to include their dwelling house, barns, stables, and outhouses; and that except as to the said 23 acres defendants' plea of homestead be denied."

The court peremptorily instructed the jury as follows:

"You are instructed to return a verdict for the plaintiff for the amount sued for and for foreclosure of the deed of trust lien on the land in the W. D. Shockley survey. You are instructed to return a verdict for the defendants denying a foreclosure of the deed of trust lien on the land in the R. M. Lindsay survey."

Judgment was entered in accordance with the verdict, and the appellant brings the case to this court for review, predicating error upon the denial of a foreclosure of his lien on 97 acres of land in the R. M. Lindsay survey.

The facts of this case show that J. M. Mahone, the husband, purchased from J. H. Braden, for $4,000, 230 acres of land of the W. D. Shockley survey, executing a note for the purchase price, dated August 20, 1919, and payable to the order of J. H. Braden on August 20, 1923. There is no question made in the record about the note. When H. M. Mahone purchased the 230 acres of the W. D. Shockley survey, he owned two contiguous tracts; one containing 120 acres, a part of the R. M. Lindsay survey; the other tract lying immediately west and across a creek from the 120-acre tract, and being a part of the J. Collom survey, containing 177 acres of land. The 177 acres is not in the suit. In order to secure the payment of the $4,000 note given for the purchase of the 230 acres of the W. D. Shockley survey, J. M.

Mahone executed, in addition to the vendor's lien reserved in the deed of conveyance, a deed of trust to J. H. Braden on the 230 acres of the W. D. Shockley survey and on the 120 acres, less 23 acres (being 97 acres), of the R. M. Lindsay survey. The deed of trust is dated August 20, 1919, is signed by J. M. Mahone, and is duly acknowledged and recorded. The deed of trust is in the usual form, and the following quotation need only be set out:

"Second tract. A part of the R. M. Lindsay H. R. survey in Bowie county, Texas, lying about five miles south of Hooks, Texas, described as follows: Being lots Nos. 1 and 8 in the partition of certain land between J. G. Cuthertson and A. D. Barrett et al. as shown by the record of said partition in the minutes of the district court of Bowie county, Texas, Book 1, at page 291, and which is more particularly described as follows: Beginning at the northwest corner of said Lindsay H. R. survey. Thence east with the N. B. line of said Lindsay survey 700 vrs. to a stake, the corner of lot No. 7 in above-mentioned partition. Thence south 950 vrs. to a stake for corner on the N. B. line of a 320-acre tract of said Lindsay survey set apart to A. D. Barrett in the above-mentioned partition. Thence west 700 vrs. to a stake in the W. B. line of said Lindsay survey. Thence north 950 vrs. to the place of beginning, save and except 23 acres of the last-described 120 acres of land, which together with 177 acres of the J. Collom H. R. survey lying directly west of this tract is here now designated as my homestead, my dwelling where I now live being on the 177 acres of the J. Collom H. R. survey of land in Bowie county, Texas."

The following evidence appears:

"My name is H. M. Mahone. I live down in the same community in which this land is located, and the Collom survey joins me on the east—I am just west of the J. Collom survey. That survey consists of a hundred and seventy-seven acres. I have been in that neighborhood 30 some odd years. I am pretty well acquainted with the land in the J. Collom and the Lindsay surveys. I don't know how long Mr. Mahone had been living on this land; he bought that Lindsay land before he married. I don't know how long he has been owning the Collom survey, but some eight or ten years. He is a farmer, and he farmed this land. He has been farming this Collom and Lindsay headright since he improved it and cleared it up. The Collom survey is the best land; it is a better grade of land than the Lindsay survey. In designating or picking out a homestead out of the 297 acres including the Lindsay headright and the J. Collom headright, and you were to pick out 177 acres of the J. Collom, the 23 acres surrounding his residence, I would think that designation would pick out the most valuable land there, for a homestead."

On cross-examination the same witness testified:

"Mr. J. M. Mahone and Mrs. Fannie Mahone are husband and wife. They have six children, ranging from five years up to nineteen years old; they are all girls except the youngest one.

Mr. Mahone left his wife and family some time ago, and his residence is unknown. His wife and children live on this 120 acres in the Lindsay survey. I know where that land is located. Their house and dwelling and everything is on that 120-acre tract; the three tenant houses are on that survey. They are located considerably north of where his residence is, a little northwest, but all of them are located on this Lindsay survey. All of his orchard, truck patches, and everything of that kind is located on the Lindsay survey, and they have always lived on the Lindsay survey since they married. Neither his residence nor anything was on this 177 acres; it is across the creek. Mrs. Mahone and her children here have no means of support except farming. There is between 75 and 80 acres cleared on that Lindsay tract, and it lies—that is, the cleared land—east and north of the house, around the house, and convenient to it. It is not such good land; it is pretty badly worn. I would not call it good smooth land; it is pretty thin, I think. It is cultivated every year, and they raise tolerably fair crops on it, but it is pretty badly broken with hollows. The dwelling house on the Lindsay survey is located on the south end, and the barn is north, and the orchard is a little west of the house, right at the house. These tenant houses are on the rest of the 120 acres of the Lindsay survey.

"Q. (By the Court.) Could you take 23 acres out of that, and include the orchard, house, and dwelling and have it all together? A. Why, yes; it would pretty near cover all the houses except one. I think a 23-acre tract all joined together would cover all that except one tenant house, and that is on the north end of the tract. It is about 300 yards from the residence to the first tenant house going north, and the residence is on the south side of the Lindsay survey. It is about a couple of hundred yards from the residence to the south line—well, the front gate is right on the line, and the house is right at the front gate. I could not say exactly how far it is from the southwest corner, going north, to the first tenant house, but it is not far; it might be 600 or 700 yards; and then there is another one still further north, and then another still further on, on the boundary line. She rents out that land every year to tenants who live in that house. All of it is on that Lindsay tract of 120 acres. I think there is 50 acres in cultivation on that Collom tract, but there is between 75 and 80 cleared."

On redirect examination witness testified as follows:

"To take off the 23 acres there would be left about the same amount of cleared land on each tract. They still cultivate the land over on the J. H. Collom survey, and it makes better crops than the other; it is better land. Mr. Mahone cultivated it all. I think this creek crosses the line two or three different times. It is all in one and the same body of land, and all under fence. To survey out 23 acres including the house would take their orchard, house, and barn and two of the tenant houses—well, it might not get two, it might not take but one, but it would take one. It is 700 varas across that tract."

The appellant purchased the note, with the deed of trust, from J. H. Braden in due course of trade, for a valuable consideration, before its maturity, and without knowledge of any facts other than the recitals of the deed of trust.

Johnson & Waters, of New Boston, for appellant.

King, Mahaffey & Wheeler and G. C. Barkman, all of Texarkana, for appellees.

LEVY, J. (after stating the facts as above). The controversy in the case is entirely respecting the foreclosure of the lien under the deed of trust on the 97 acres of land on the R. M. Lindsay survey. The deed of trust describes by metes and bounds the two tracts of land upon which the lien is given, and then recites as follows:

"Save and except 23 acres of the last-described 120 acres of land (referring to the trust on the R. M. Lindsay survey) which together with 177 acres of the J. Collom H. R. survey lying directly west of this tract is here now designated as my homestead, my dwelling where I now live being on the 177 acres of the J. Collom H. R. survey in Bowie county, Tex."

The point made against the right of foreclosure is, as urged by the appellee, the attempted designation of the homestead, as was done, of 177 acres of the J. Collom survey and 23 acres of the 120-acre tract of the R. M. Lindsay survey, is legally abortive for want of description, and therefore the deed of trust was ineffective and void as to all of the 120 acres on the R. M. Lindsay survey; the proof showing all of the said 120-acre tract to be the homestead of J. M. Mahone and wife.

[1] According to the evidence there were two properties, in separate and distinct tracts, but contiguous to each other, aggregating 297 acres of land. There was a 177-acre tract on the J. Collom survey, and a 120-acre tract on the R. M. Lindsay survey. Both tracts were used and cultivated as one farm by J. M. Mahone. The same amount of cleared land was on each tract, which was "between 75 and 80 acres" on each tract. The barns, three tenant houses, the orchard, and garden were near the dwelling, and all on the 120-acre tract. The dwelling was located near the south boundary line of the 120-acre tract. As stated, "the front gate is right on the line, and the house is right at the front gate." In such special circumstances the husband had the right under the law, as conceded, to designate and set apart the homestead of 200 acres, and to do so without the concurrence of the wife. And he could fix the excess of 97 acres over the 200 acres on either the 120-acre tract or the 177-acre tract; the right being fairly exercised toward the wife, and the residence being included in the homestead designation. It can scarcely be doubted from the evidence that the setting apart of the homestead of 200 acres, as done, was not unjustly or un-

fairly done toward the wife and family. The 177-acre tract, as shown, "makes better crops than the other (the 120-acre tract); it is better land." And the residence, barns, three tenant houses, the orchard, and garden can easily be encompassed within the boundaries of the 23 acres on the Lindsay survey. As thus set apart, the homestead of 200 acres forms practically one farm compactly located and conveniently situated with reference to the residence and tenement buildings and the orchard and garden used in connection therewith.

[2] Was the designation void for want of description? The statutory requirement is that the instrument designating the homestead shall contain—

"A description by metes and bounds, or other sufficient description to identify it, of the homestead so claimed by him, stating the name of the original grantee and the number of acres, and if more than one survey, the number of acres in each." Article 3842, Rev. Stat. of 1925.

The description of "177 acres of the J. Collom H. R. survey of land in Bowie county, Tex., lying directly west of this tract (the 120-acre tract on the R. M. Lindsay survey)," could in this case meet the statutory requirement of "or other sufficient description to identify it." It is susceptible of identification by extrinsic proof. As to the 23 acres, the legal effect of the deed of trust is first to be determined, for by the deed of trust J. M. Mahone conveyed the entire 120 acres by metes and bounds "save and except 23 acres of the last-described 120 acres of land which, together with 177 acres of the J. Collom. H. R. survey lying directly west of this tract, is here now designated as my homestead." If the exception or reservation be legally valid as against the grantee in the trust deed, then the 23 acres did not pass to him under the deed of trust; otherwise, because of uncertainty of description, the exception would legally fail. Waterhouse v. Gallup (Tex. Civ. App.) 178 S. W. 773; De Roach v. Clardy, 113 S. W. 22, 52 Tex. Civ. App. 233. It was the clearly expressed intention of J. M. Mahone to pass title to the whole of the 120 acres definitely described in the deed of trust less the 23 acres reserved. And it is the clear intention, considering all the wording, to exclude from the operation of the deed of trust the 23 acres as part of "my homestead." In effect the 23 acres excepted is described as being "my homestead" part of the 120 acres to include 23 acres. The parties evidently so intended. The very mention of "my homestead," in connection with the 23 acres, raises a fair presumption that the excepted 23 acres should include the family residence and buildings connected therewith. In such case the intent of the parties as to the locality of the 23 acres becomes a question of fact to be determined by the facts existing at the time of the execution of the deed of trust. The dwelling was situated on the south boundary of the tract described in the deed of trust, and, in the absence, as here, of anything indicating a different boundary, the law would determine that the 23 acres should be laid off in the south end of the tract in a convenient and useful form so as to include the dwelling and buildings and grounds used in connection therewith. It is evident that it could be so laid off and bounded. It is true that the deed of trust recites that "my dwelling house where I now live" is situated "on the 177-acre tract," but that is a statement of mere locality or the residence, not controlling against the true fact of its location and the mind and intention of the parties in respect thereto. Such recital was a clear mistake of fact in matter of description as to the precise locality of the residence. And it is evident that the parties did not intend to pass title to the residence and grounds used in connection therewith. It is concluded that the description of the 23 acres excepted is not so vague and uncertain as to be legally ineffective and void, and therefore the exception should not be invalidated.

[3] A description is certain which can be made certain. And in this case what was intended to be excepted is not a matter of mere conjecture. The family residence was intended to be reserved, together with the grounds around it fixedly given as 23 acres, and the location of the residence on the ground affords sufficient conclusions that there was error in holding the deed of trust void as to the entire 120 acres, and that the appellant was not entitled to a foreclosure as to the 97 acres.

[4, 5] The judgment is reversed, and the case must be remanded to the district court instead of judgment being rendered here, in order to give the appellee the special right to select the particular boundary or form of the land constituting the 23 acres located on the south line of the tract including the residence, barns, orchard, garden, and buildings. The appellant by his pleading agrees that appellee can have 23 acres surveyed on the ground in an advantageous way and form. Upon the failure or refusal of the appellee to make the particular selection of boundary and form on the south line by a time appointed by the court to do so, then the court should proceed to have it designated and allow a foreclosure on the 97 acres excess not included in the special field notes of the 23 acres so designated.